No. 25,966.

THE MULBERRY STATE BANK, *Appellant*, v. CARL J. PETERSON (ROY L. BONE substituted), as Bank Commissioner, etc., *Appellee*.

SYLLABUS BY THE COURT.

BANKS AND BANKING—*Time Certificates of Deposit—Benefits Under Guaranty Fund.* The proceedings considered, and *held,* time certificates of deposit, issued by a bank a short time before it was closed for insolvency, did not evidence deposits which entitle the holder of the certificates to benefit of the guaranty fund.

Appeal from Bourbon district court; EDWARD C. GATES, judge. Opinion filed June 6, 1925. Affirmed.

*John A. Hall,* of Pleasanton, for the appellant.

*Charles B. Griffith,* attorney-general, *John G. Egan,* assistant attorney-general, and *J. B. Larimer,* of Topeka, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to compel the bank commissioner to issue certificates payable from the depositors' guaranty fund on account of two time certificates of deposit of $2,500 each issued by the Farmers State Bank of McCune and sold to plaintiff. The court held the certificates were issued by the bank as a means of borrowing money, and denied the relief prayed for. Plaintiff appeals. There is no dispute about the material facts. The contention is, the court should have drawn from the facts the inference of deposit instead of money borrowed.

The Farmers State Bank of McCune was a guaranteed bank. E. S. Dolson was cashier and Ora Riggs was assistant cashier. Dolson was a member of the firm of Van Patten & Dolson. The firm was state agent of the Liberty Life Insurance Company of Des Moines, Iowa. Leonard Campbell represented the firm in some capacity. Dolson caused the certificates to be issued and sold to plaintiff on August 30, 1921. On September 14 Dolson undertook to repeat, by sale to plaintiff of other certificates of $2,500 each, but plaintiff prudently consulted the bank commissioner about purchasing them, by letter of that date. The bank commissioner responded by telegram, advising plaintiff not to buy. A deputy bank commissioner commenced an examination of the bank the next day, September 15. The bank was closed by the bank commis-

sioner on September 21. It was hopelessly insolvent. It had been looted by Dolson,. who absconded the day it was closed. His defalcations had probably covered a period of four or five years. There was forged paper in the bank; real estate appeared as assets which did not exist; customers' bonds to the extent of $40,000 were missing; individual deposits in the sum of $55,000 were not carried on the bank's books; there was no record of outstanding time certificates of deposit to the amount of $25,000. Dolson had been managing officer of the bank, and of course he knew the condition of its affairs long before the examiner walked in September 15 and commenced to check the bank's assets and liabilities.

Dolson wrote the certificates on the afternoon of August 30, but he dated one of them August 10 and the other August 20. Each one was a six months' time certificate, bearing three per cent interest, payable to the order of Van Patten & Dolson, state agents. When he had written the certificates, Dolson instructed the assistant cashier to sign them. She signed them and delivered them to Dolson.

On August 30 the checking account of the payees with the bank was overdrawn, as it had been most of the time since June, and as it continued to be until September 15. Dolson's balance was $63.85 and Van Patten's balance was $19.55. No funds were in fact deposited by the payees, or by any one for them, when the falsely dated certificates were issued, and the statement of deposit of money by the payees contained in each certificate was not true.

When the assistant cashier delivered the certificates to Dolson, he told her if the Mulberry bank should inquire about them and ask if they represented a regular deposit she should say yes. Dolson then indorsed the certificates in the firm name and gave them to Campbell, who personally took them to Mulberry, thirty-five miles away, and sold them to plaintiff for $4,500. When Campbell offered the certificates to plaintiff, plaintiff's cashier called the McCune bank by telephone and inquired if the bank were a guaranteed bank and if the certificates represented regular deposits. The assistant cashier replied as Dolson had instructed. Plaintiff's cashier asked that the representation be put in writing, and the assistant cashier did so by letter to plaintiff, dated August 30. Plaintiff gave Campbell a cashier's check for $4,500, payable to the order of Van Patten & Dolson, and Campbell returned with it to McCune. The next day, August 31, the check was entered in the time-deposit account and was paid in due course of business. On the same day Dolson placed

among the cash items his personal check for $500, drawn on some bank in Lincoln, Neb. He did not forward the check for presentment and payment, but kept it in his bank until September 15. On that day the deputy bank commissioner directed him to take it up, and he did so. .

When a deposit guaranteed by the guaranty fund act is made, the depositor must be actor. Either by himself or through conduct exhibited in his behalf or for his benefit, he effects the deposit. The bank is passive recipient, even although it may have stimulated the depositor's action and may have been benefited by the deposit. In this instance the bank, by its cashier, was sole actor. The cashier was in position to use the name of his bank and the name of his firm. The firm had no purpose to accomplish by making a deposit with the bank, had no means with which to make a deposit, and made no deposit. The cashier issued the certificates without a deposit, employed deception to give the certificates color of genuineness, indorsed them, and put them into the hands of a messenger to peddle to plaintiff, in order to get some cash in the bank's till. In a sense the certificates were bills payable, discounted by plaintiff; but because plaintiff was misled as to the true character of the paper, there was no actual borrowing or lending by anybody. In any event, there was no deposit of which plaintiff is assignee which entitles plaintiff to benefit of the guaranty-fund act.

There was some evidence that Van Patten & Dolson, as state agents, followed the practice of making deposits in banks, taking time certificates and discounting the certificates to other banks as a means of promoting their life insurance business. So far as the record discloses, such deposits did not exceed in any instance the sum of $1,000, a sum not at all adequate to meet the needs of the Bank of McCune in late August and early September of 1921. Besides that, this deposit was not made with plaintiff, and plaintiff was already obligated to render favors to Van Patten & Dolson in respect to their life insurance business because of a time deposit of $1,000 which they had made with plaintiff long before the transaction under scrutiny.

The judgment of the district court is affirmed.